UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TOTAL E&P USA, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6644 C/W**<br>**10-106**<br>**REF: ALL CASES** |
| **KERR-MCGEE OIL & GAS CORPORATION, ET AL.** | **SECTION "N" (3)** |

**ORDER**

On July 9, 2014, Defendants' Motion to Compel the Production of Documents from the Individual Claimants [Doc. #283] came on for oral hearing before the undersigned.  Present were Jeffrey Zeiger and John Pearce on behalf of Statoil Gulf of Mexico, L.L.C. ("Statoil"), Patrick Shelby on behalf of Total E&P USA Inc. ("Total") (collectively with Statoil, "defendants"),[1] and Matthew Fantaci and Taylor Darden on behalf of the individual claimants.  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motion, the opposition and the case law, the Court rules as follows.

**I.     Background**

The complaint alleges as follows.  This is a dispute concerning oil and gas royalties.  The

---

[1] In this lawsuit, Total and Statoil are plaintiffs.  In the consolidated lawsuit, they are the defendants.  The parties refer to Total and Statoil as defendants for purposes of this motion, and the Court refers to them as such as well.

lease at issue covers Green Canyon Block 640 in the Gulf os Mexico ("GOM"). Total operates the lease. Kerr-McGee Oil & Gas Corporation ("Kerr-McGee"), now Anadarko US Offshore Corporation, and the individual defendants/consolidated plaintiffs ("claimants") own overriding royalty interests on production from the lease. Under the Outer Continental Shelf Royalty Relief Act ("RRA"), the lease is entitled to royalty-free production until it has produced 87.5 million barrels of oil. The assignments that govern the overriding royalty interests state that royalties will be paid in the same manner as they are paid to the federal government.

Total and Statoil argue that no overriding royalties are due to claimants until the lease has produced 87.5 million barrels of oil. Total filed this declaratory judgment action in which it asks the Court to declare that its interpretation of the assignments is correct. Total has already paid some royalties and seeks to offset future payments by these amounts.

The consolidated suit is generally a mirror action – the defendants in this lower-captioned suit sue the Total and Statoil, arguing that they are entitled to royalties as of the date of initial production of oil and gas.

## II.    The Parties' Contentions

### A.    Defendants' Motion

The individual claimants each submitted a near-identical affidavit in support of plaintiffs' opposition to defendants' motion for summary judgment. Defendants seek two types of documents: (1) all communications between the individual claimants and/or Kerr-McGee related to the lease or the overriding royalty (not including those on which an attorney is copied) and (2) any draft affidavit. Claimants produced a small number of e-mails from 1997 through May 2009. Claimants informed defendants that – apart from a draft of the affidavit of third-party Donald Wolf – all draft

affidavits are privileged. Claimants also withheld all other communications as protected by the work-product doctrine. Claimants even refused to produce redacted draft affidavits, contending that the entire draft affidavits are privileged.

Defendants argue that claimants can not meet their burden of proving that all communications between themselves without an attorney present over a five-year period were "produced by or for an attorney preparing for litigation." They note that blanket assertions of privilege are rejected by the Fifth Circuit. They also note that the 39 communications from September 2009 identified on their privilege log pre-date their retention of counsel.

With regard to the draft affidavits, defendants contend that they were drafted by counsel (given that they are near identical). Defendants argue that the only way to know whether they were is to compare the drafts to the final affidavits. Citing Fifth Circuit case law, they argue that courts have repeatedly refused to apply the attorney-client privilege to information that the client intends his attorney to impart to others. In other words, defendants maintain that "those parts of attorney-client documents that ultimately appear in published documents are outside of the privilege."

**B.   Claimants' Opposition**

Counsel for claimants readily admits that he drafted the affidavits after communicating with each claimant. With regard to the drafts, claimants contend that both the attorney-client and work-product privileges protect them from disclosure. Claimants argue that Louisiana law provides the rule of decision in this case as to the attorney-client privilege. Citing case law from other federal courts, claimants maintain that courts routinely hold that draft affidavits are protected by the attorney-client privilege. They contend that merely filing the final version of the affidavits does not constitute waiver. Claimants argue that because the drafts themselves constitute privileged attorney-

client communications, there is no feasible way to produce a redacted version without revealing the privileged information.

Claimants also maintain that the work-product privilege protects the drafts from disclosure because they were created during litigation. They argue that the drafts are "core" or "opinion" work-product material, and defendants must demonstrate a compelling need and the inability to discover the substantial equivalent by other means. Claimants note that defendants contend that they need the drafts to test the credibility of claimants' testimony because they are all near identical. Claimants argue that they are identical because they all understood the contracts the same, and there would have been no meeting of the minds had any of them thought differently. Citing case law, claimants note that defendants can depose them should they wish to test their credibility. They note that they swore to the final affidavits and not the drafts, and the drafts are thus irrelevant. Claimants argue that the case law on which defendants rely is inapposite because it addressed pleadings and not affidavits. They contend that should the Court adopt defendants' arguments, drafts of every document created by attorneys filed in a lawsuit would be subject to disclosure in redacted form.

Noting that defendants seek communications between claimants over a five-year period, claimants maintain that over four years and eleven and one-half months of this five-year period occurred after defendants filed suit. The communications that occurred during the two-week period not covered by the litigation were made in anticipation of litigation. Claimants maintain that Total had stopped paying the overriding royalties, and Statoil had paid none. Claimants thus discussed the option of a lawsuit before defendants filed the declaratory-judgment action.

With regard to those communications between claimants and without an attorney present

over the rest of the five years, claimants note that defendants cite to no authority that such communications are not protected by the work-product privilege. Should the Court adopt defendants' arguments, claimants maintain, all communications between co-parties to a lawsuit would be discoverable simply because no attorney was present.

### C. Defendants' Reply

With regard to the communications not involving an attorney, defendants argue that the work-product privilege applies only to documents prepared by or for an attorney preparing for litigation. Defendants contend that because no attorney was involved in the creation of these communications, the work-product privilege does not protect them. Defendants also note that every other party to this litigation has produced similar documents.

Defendants note that they only seek to compel the disclosure of those portions of the draft affidavits that were included in the final, publicly-filed affidavits presented to the Court. Defendants maintain that they intend to determine whether claimants' identical word-for-word affidavits were independently formed with contemporaneous intent or merely an after-the-fact interpretation drafted by counsel.

### III. Law and Analysis

Federal Rule of Civil Procedure 26(b)(3) provides that documents "prepared in anticipation of litigation by or for **the party** [*i.e.*, not just by or for the attorney] may not be obtained by one's opponent through discovery without a showing of substantial need or undue hardship in obtaining the substantial equivalent of the document." Fed. R. Civ. P. 26(b)(3) (emphasis added). "Consequently, courts have held that information shared among co-parties in a joint-representation context will be protected under the work-product doctrine if those documents were prepared in

anticipation of litigation." *In re Megan-Racine Assocs., Inc.*, 189 B.R. 562, 574 (Bkrtcy. N.D.N.Y. 1995). Thus, the parties asserting the privilege must demonstrate that a substantial probability of litigation existed at the time the material sought to be protected was created. *See Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505 (E.D.N.Y.1986) (citations omitted). A determination of whether there was a substantial probability of litigation is fact specific. *Id.* The evidence before the Court here demonstrates that the e-mail communications between claimants occurred in anticipation of litigation, either in anticipation of their lawsuit or that of defendants. Total had ceased the payments of the overriding royalties, and Statoil had never paid them. Moreover, Statoil had rescinded its original division order and had attempted to replace it with an amended division order that informed claimants that it would pay them but, if Statoil won in a lawsuit, claimants would have to reimburse it with interest. [Doc. #150, Ex. 64]. The Court finds this evidence sufficient to demonstrate that litigation could be expected, and claimants created the respective e-mails in anticipation of and during the litigation here. Thus, because the work-product doctrine protects documents prepared by co-parties in anticipation of litigation, defendants are not entitled to them. And defendants have not met their burden of demonstrating a substantial need or that they can not obtain the information from equivalent means.

With regard to the draft affidavits, the general rule is that draft documents are only privileged to the extent that communications contained therein are not revealed to third parties. *U. S. Postal Serv. v. Phelps Dodge Refining Corp.*, 852 F. Supp. 156, 163 (E.D.N.Y. 1994); *Schenet v. Anderson*, 678 F. Supp. 1280, 1283-84 (E.D. Mich. 1988); *United States v. Schlegel*, 313 F. Supp. 177, 179 (D. Neb. 1970); *see also Apex Mun. Fund v. N-Group Sec.*, 841 F.Supp. 1423, 1428 (S.D. Tex. 1993) (finding that only those parts of attorney-client documents that ultimately appear in published

documents are outside the privilege); *Buford v.. Holladay*, 133 F.R.D. 487, 492 (S.D. Miss. 1990) (holding that official publication of documents does not waive the privilege "as to all communications that were a necessary part of creating that public document"). Under this rule, claimants should generally produce to defendants redacted copies of the draft affidavits.

However, there is case law on which claimants rely to support their argument that redacted draft affidavits are non-discoverable. In *Ideal Electric Co. v. Flowserve Corp.*, the court held that draft affidavits are protected by the attorney-client and work-product privileges. 230 F.R.D. 603, 606-09 (D. Nev. 2005). The court also denied the defendant's request for redacted copies of the affidavits:

> The drafts are only useful to Flowserve to the extent they contain information that is additional or different to the final affidavit that Flowserve has already received. However, as this Court has explained above, to the extent that these drafts are different, these differences are protected by the attorney client [sic] privilege and the work product [sic] privilege, As such, there is no feasible way to redact them.

*Id.* at 610. The reasoning underlying the *Ideal* court's opinion flows from the process of the crafting of the affidavits themselves. The Court finds that redacting the documents themselves would reveal the attorneys' mental impressions. Indeed, counsel for Statoil admitted at the oral hearing that he seeks to review the "back and forth process" between counsel and claimants while drafting the affidavits. The Court can not fathom how that would not reveal the mental impressions and strategies of counsel for claimants. The draft affidavits are thus protected from disclosure Accordingly, the Court also denies the motion as to the draft affidavits.

**IV.    Conclusion**

For the foregoing reasons,

**IT IS ORDERED** that Defendants' Motion to Compel the Production of Documents from

the Individual Claimants [Doc. #283] is DENIED.

    New Orleans, Louisiana, this 10th day of July, 2014.

                                              *[signature: Daniel E. Knowles, III]*

                                              **DANIEL E. KNOWLES, III**
                                              **UNITED STATES MAGISTRATE JUDGE**