UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **TOTAL E&P USA, INC.** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6644 C/W**<br>**10-106** |
| **KERR-MCGEE OIL & GAS CORPORATION, ET AL.** | **SECTION  "N" (3)** |

**ORDER**

On June 18, 2014, Total E&P USA, Inc.'s and Statoil Gulf of Mexico, L.L.C.'s  Motion to Compel the Production of Documents from Chevron U.S.A., Inc. in Response to Subpoena [Doc. #255] came on for oral hearing before the undersigned.  Present were Scott O' Connor on behalf of Total E&P USA, Inc., John Worth on behalf of Statoil Gulf of Mexico, L.L.C., and Gerald Slattery and Colleen Jarrot on behalf of Chevron U.S.A., Inc.  After the oral hearing, the Court took the motion under advisement.  Having reviewed the motion, the opposition and the case law, the Court rules as follows.

**I.     Background**

This is a dispute concerning oil and gas royalties.  The lease at issue covers Green Canyon Block 640 in the Gulf of Mexico ("GOM").   Total E&P USA, Inc. ("Total") operates the lease. Kerr-McGee Oil & Gas Corporation ("Kerr-McGee") and numerous individual defendants/consolidated plaintiffs own overriding royalty interests on production from the lease.

Under the Outer Continental Shelf Royalty Relief Act ("RRA"), the lease is entitled to royalty-free production until it has produced 87.5 million barrels of oil. The assignments that govern the overriding royalty interests state that royalties will be paid in the same manner as they are paid to the federal government.

Total argues that no overriding royalties are due to Kerr-McGee and the individual parties until the lease has produced 87.5 million barrels of oil. Total thus filed this declaratory judgment action in which it asks the Court to declare that its interpretation of the assignments is correct. Total has already paid some royalties and seeks to offset future payments by these amounts. Total also seeks to deposit into the registry of the Court any monies that it may owe if its interpretation of the assignments is incorrect.

The consolidated suit is generally a mirror action – defendants in the lower-captioned suit sue the oil and gas lessees, Total and Statoil Gulf of Mexico, L.L.C. ("Statoil"), arguing that they are entitled to royalties as of the date of initial production of oil and gas.

## II. The Parties' Contentions

### A. The Motion to Compel

Chevron U.S.A., Inc. ("Chevron"), a party to one of the agreements here, provided affidavit testimony in support of Kerr-McGee's opposition to defendants' motions for summary judgment.[1] Defendants now contend that Chevron must respond to discovery related to the assertions in the affidavit. The affidavit of Paul G. Walker supported Kerr-McGee's interpretation of the lease, *i.e.*, that overriding royalties are due and payable under the lease despite the suspension of royalties due

---

[1] "Defendants" here refers to Total and Statoil, as they are the defendants in the consolidated lawsuit.

the federal government under the RRA.

On October 16, 2013, Total served a subpoena on Chevron that sought documents related to (1) the parties' intent when executing the assignments; (2) Chevron's interpretation of the assignments; (3) the reason Chevron voluntarily entered this lawsuit; (4) Chevron's communications with the parties in this litigation; and (5) documents related to the affidavit itself.

Defendants first argue that Chevron has waived any objections to the subpoena because it failed to respond to them within 14 days under the federal rules. Chevron produced its responses and objections 20 days after service of the subpoena.

Defendants next argue that Chevron is withholding documents that are not protected by a privilege. Defendants point to documents in the privilege log that were sent to or received from third persons outside of Chevron. Defendants also note that numerous documents do not appear to directly involve attorneys or privileged communications from attorneys. Defendants further note that many documents relate to business issues rather than legal advice.

Chevron produced not one redacted document. Defendants argue that the privilege log does not contain enough information to confirm that an entire document is privileged. With regard to the work-product privilege, defendants maintain that they can not determine if the documents were prepared in anticipation of litigation. Defendants argue that Chevron has not met its burden with regard to the privilege of these documents.

Defendants maintain that RFP Nos. 11, 12-13, 14-15, 18-19, 20 and 24 seek documents that are necessary to the reliability and credibility of the affidavit. Chevron objected on the grounds that the RFPs are unduly burdensome and overbroad, not reasonably calculated to lead to the discovery of admissible evidence and seek proprietary and confidential information. Defendants argue that

Chevron fails to demonstrate how the requested information is inaccessible, difficult or costly to produce. Given Chevron's size and economic resources, defendants contend that it is hard to imagine that the RFPs impose a burden on Chevron. Defendants also note that they narrowly tailored the RFPs to leases under the RRA.

With regard to the objection on confidential and proprietary grounds, defendants note that the protective order in place is adequate to protect the information and allows non-parties to adopt it.

Pointing to specific elements of production, defendants note that Chevron produced some documents that reference other documents that Chevron did not produce. For example, Chevron produced an e-mail that referenced an offer for the overriding royalty interests but failed to produce the offer itself.

### B. Chevron's Opposition

Chevron served its written responses and objections before the return date of the subpoena. Counsel argues that he inadvertently overlooked the "earlier of" language in the rule and thus missed the 14-day deadline. Chevron notes that counsel had informed defendants by telephone of its objections six days after receipt of the subpoena, so defendants knew the objections. Chevron thus asks the Court to rule on the merits of its objections.

Chevron maintains that it has acted in good faith. It notes that at least one RFP is unlimited as to time, and many cover long periods of time (10, 15, or 19 years). Some of the RFPs required a search for documents in Chevron's offices around the world or even across the entire United States. And numerous RFPs seek "all documents concerning" certain topics, irrelevant information and Chevron's confidential and proprietary information.

Citing case law, Chevron notes that courts refuse to find waiver when the subpoena is overbroad on its face, the subpoenaed witness is a non-party acting in good faith, and counsel for the subpoenaed party was in contact with the subpoenaing party concerning its compliance before the time the subpoenaed party challenged the legal basis for the subpoena. Chevron contends that all three circumstances exist here. Chevron then distinguishes the case law on which defendants rely, noting that there, the delays were much more egregious.

Chevron notes that defendants have not demonstrated prejudice. It notes that they did not even file the motion to compel until six months after they received the objections and four months after they received Chevron's privilege log. It also notes that the discovery cut-off date is approximately three months from now. Chevron argues that the Fifth Circuit has expressed a strong preference that issues be decided on the merits.

Chevron maintains that it has properly asserted the attorney-client and work-product privileges. It argues that from the beginning, its business managers had every reason to confer with their lawyers about issues related to the overriding royalty interests. And when defendants questioned the suspension of royalties, Chevron contends that it began to anticipate litigation. Chevron asserts that all of the privileged documents are meticulously set out in its privilege log and provides all information required under Rule 45. The affidavit of Salvadore V. Spalitta, Chevron's Senior Counsel, refutes defendants' arguments that some documents were sent to third persons or were not communications by an attorney.

Chevron next points to specific RFPs as raised in defendants' motion and argues that many of them seek irrelevant and confidential information, and producing the information would impose an undue burden on Chevron. It maintains that because it is not a party to this action, its non-party

status is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue.  Citing case law, Chevron also contends that a discovery request is overbroad or unduly burdensome if it uses an omnibus term and applies to a general category of documents or a broad range of information.

With respect to RFP Nos. 12-14 and 24, Chevron argues that the availability of similar documents and information from another source renders them unduly burdensome.  Chevron points to the affidavit of R.W. Robison, Jr., attached by Total to the subpoena.  Robison reviewed all GOM leases subject to the RRA.  In the affidavit, Robison outlines the detailed procedure that he used to determine whether any interest owners were paying the overrides while the lessor's royalty was suspended under the RRA.  This, Chevron argues, is adequate to respond to RFP Nos. 12-14 and 24.

Chevron maintains that RFP Nos. 15, 18-20 and 24 seek confidential and proprietary information.  Chevron notes that both Total and Statoil are its direct competitors, both nationally and internationally.  Citing case law, Chevron notes that a non-party's right to privacy in its financial affairs is deserving of special protection.

### C. Defendants' Reply

Defendants again argue that Chevron has waived all objections to the discovery requests. Citing case law from this circuit, defendants contend that no court here has adopted the argument that objections are not waived because the subpoenaed entity is a non-party who orally communicated one objection to the subpoenaing party.

Defendants also note that Chevron never moved to quash or to modify the subpoena.  They thus argue that Chevron can not contend that they neglected to avoid imposing an undue burden on a non-party.

6

Defendants further argue that Chevron is well-equipped to comply with these discovery requests. They assert that companies like Chevron are in litigation every day and must have responded to much larger discovery requests in the past. They argue that the affidavit of Robison reveals that there are only 105 override interests in the GOM, not all of which involve Chevron.

Listing several requests individually, defendants argue that they seek relevant documents that go to bias and credibility.

Defendants maintain that Chevron's assertion of privilege remains suspect. Defendants note that since the filing of the motion, Chevron has produced numerous documents previously withheld as privileged. Defendants ask the Court to review all entries with no attorney listed, documents sent to or received from third parties, and all entries with questionable work-product designations.

### III.    Law and Analysis

As an initial matter, the Court does not find that Chevron has waived its objections to the discovery requests under the factual circumstances here. Chevron's status as a non-party, the breadth of the subpoena and the fact that Chevron verbally raised an objection to the subpoena before it responded to it weigh in favor of finding no waiver of objections. *See, e.g., Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (affirming that district court had discretion to consider untimely objection when the objector was non-party acting in good faith, the subpoena appeared to be overbroad, and counsel contacted subpoenaing party to voice objection). The Court finds that Chevron acted in good faith here, responding only six days after the deadline but already having informed defendants of its intent to object.

This Court now addresses the privilege log. The federal common law of privilege applies in this case brought under the court's federal question jurisdiction. *Willy v. Admin. Review Bd.*, 423

F.3d 483, 495 (5th Cir. 2005). The attorney-client privilege protects communications by a client to his lawyer and communications from the lawyer if they would tend to disclose the client's confidential communications. *See Hodges, Grant & Kaufman v. United States*, 768 F.2d 719, 720–21 (5th Cir. 1985) ("attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice. The privilege also protects communications from the lawyer to his client, at least if they would tend to disclose the client's confidential communications.") (citations omitted). It is axiomatic that the attorney-client privilege "only protects disclosure of confidential communications between the client and attorney; it does not protect disclosure of underlying facts." *United States v. Edwards*, 39 F. Supp. 2d 716, 723 (M.D. La. 1999) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981); *In re Six Grand Jury Witnesses*, 979 F.2d 939 (2d Cir. 1992); *United States v. Freeman*, 619 F.2d 1112 (5th Cir. 1980); *Computer Network Corp. v. Spohler*, 95 F.R.D. 500 (D.D.C. 1982)).

The burden of sustaining a claim of attorney-client privilege falls on the party asserting the privilege. *Exxon Corp. v. St. Paul Fire & Marine Ins.*, 903 F. Supp. 1007, 1008 (E.D. La. 1995); *High Tech Commc'ns, Inc. v. Panasonic Co.*, No. 94-1477, 1995 WL 45847, at *1 (E.D. La. Feb.2, 1995) (citing *Hodges*, 768 F.2d at 721) (additional citations omitted). "Although the privilege belongs to the client, and only the client may waive it, an attorney may assert the privilege on the client's behalf." *Haines v. Liggett Grp.*, 975 F.2d 81, 90 (3d Cir. 1992) (citing McCormick on Evidence § 92 (4th ed.1992)); *accord United States v. Juarez*, 573 F.2d 267, 276 (5th Cir. 1978) (citing *Fisher v. United States*, 425 U.S. 391, 402 n.8 (1976)).

Work product protection from discovery extends to "documents and tangible things that are prepared in anticipation of litigation or for trial by or for [a] party or its representative (including

the . . . party's attorney . . . or agent)," Fed. R. Civ. P. 26(b)(3)(A), but does not extend to the "underlying relevant facts." *Blockbuster Entm't Corp. v. McComb Video, Inc.*, 145 F.R.D. 402, 403 (M.D. La. 1992) (citing *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982); *Hill Tower, Inc. v. Dep't of Navy*, 718 F. Supp. 562, 566 (N.D. Tex. 1988)); *accord* 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice & Procedure § 2024, at 494 (3d ed. 2010).

The work product "privilege can apply where litigation is not imminent, as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *Udoewa v. Plus4 Credit Union*, 457 F. App'x 391, 393 (5th Cir. 2012) (quoting *In re Kaiser Alum. & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000)) (internal quotation omitted).

"The mere fact that a document is prepared when litigation is foreseeable does not mean the document was prepared in anticipation of litigation. . . ." *Arkwright Mut. Ins. Co. v. Nat'l Union Fire Ins. Co.*, 19 F.3d 1432, 1994 WL 58999, at *3 (6th Cir. 1994) (citing *Nat'l Union Fire Ins. Co. v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)). Even "[e]stablishing that a document was prepared after litigation was commenced is insufficient to prove that the document was prepared in anticipation of litigation. . . . What is crucial is that 'the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432, 449 (E.D. Tex. 2003) (quoting *In re Kaiser Alum.*, 214 F.3d at 593, *rev'd on other grounds*, 2003 WL 21911333 (5th Cir. July 25, 2003); *accord Global Oil Tools, Inc. v. Barnhill*, No. 12-1507, 2013 WL 1344622, at *6 (E.D. La. Apr. 3, 2013); *Guzzino v. Felterman*, 174 F.R.D. 59, 63 (W.D. La. 1997); *Blockbuster*, 145 F.R.D. at 404.

In addition, "[t]he law is settled that 'excluded from the work product doctrine are materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to

9

litigation.'" *Guzzino*, 174 F.R.D. at 62 (quoting *United States v. El Paso Co.*, 682 F.3d 530, 542 (5th Cir. 1982) (citing Fed. R. Civ. P. 26(b)(3) advisory committee notes)); *accord* 8 C.A. Wright, A.R. Miller & R.L. Marcus, Federal Practice & Procedure § 2024, at 503 (3d ed. 2010); *see also Hill Tower, Inc.*, 718 F. Supp. at 565 ("The mere fact this report deals with facts, opinions, and recommendations that later may be the focus of litigation does not establish that there was the expectation of litigation when this document was drafted.") (citing *Senate of P.R. v. U.S. Dep't of Justice*, 823 F.2d 574, 586 (D.C. Cir. 1987); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 865 (D.C. Cir. 1980)).

Thus, "[i]f the document would have been created regardless of whether the litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Global Oil Tools*, 2013 WL 1344622, at *6 (citing *S. Scrap Mat'l Co. v. Fleming*, No. Civ. A. 01-2554, 2003 WL 21474516, at *6 (E.D. La. June 18, 2003); *Piatkowski v. Abdon Callais Offshore, L.L.C.*, No. 99-3759, 2000 WL 1145825, at * 1 (E.D. La. Aug, 11, 2000)).

Opinion or core work product merits special protection from discovery pursuant to Rule 26(b)(3)(B). "At its core, the work-product doctrine shelters the mental processes of the attorney [or others named in the Rule], providing a privileged area within which he can analyze and prepare his client's case." *United States v. Nobles*, 422 U.S. 225, 238-39 (1975).

Nonetheless, when a party is ordered to produce its work product because the discovering party has made the showing mandated by Rule 26(b)(3)(A)(i) and (ii), Rule 26(b)(3)(B) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." Thus, tangible

materials that contain the mental impressions, conclusions, opinions or legal theories of a party's attorney or representative, otherwise known as "opinion work product," are afforded a high degree of protection. *In re Katrina Canal Breaches Consol. Litig.*, No. 05-4182, 2010 WL 2522968, at *1 (E.D. La. June 14, 2010) (additional quotation omitted) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981)); *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991); *Int'l Sys. & Controls Corp. Sec. Litig.*, 693 F.2d at 1240; *Bonneau v. F & S Marine, Inc.*, No. 09-3336, 2010 WL 1254552, at *2 (E.D. La. Mar. 25, 2010); *Bross v. Chevron U.S.A. Inc.*, No. 06–1523, 2009 WL 854446, at *5 (W.D. La. Mar. 25, 2009); *Blockbuster*, 145 F.R.D. at 403-04) (additional citations omitted).

This Court has reviewed line by line the privilege log submitted by counsel for Chevron, and the application of the aforementioned law reveals that neither the attorney-client nor work-product privilege protects the following documents from disclosure:

    F02434-E0001-00000535 (a copy of a letter from Total)
    F02434-E0001-00000539 (a copy of a letter to Total)
    F02434-E0001-00000550 (an assignment)
    F02434-E0001-00000552 (an assignment)
    F02434-E0001-00000562 (a copy of agreement Chevron and others)
    F02434-E0001-00000576 (a copy of a court pleading)
    F02434-E0001-00000582 (a copy of a court pleading)
    F02434-E0001-00000586 (a copy of a court pleading)
    F02434-E0001-00000588 (a copy of a court pleading)
    F02434-E0001-00000590 (a copy of a court pleading)
    F02434-E0001-00000591 (a copy of a court pleading)
    F02434-E0001-00000592 (a copy of a court pleading)
    F02434-E0001-00000594 (a copy of a court pleading)
    F02434-E0001-00000682 (a copy of a court pleading)
    F02434-E0001-00002608 (a copy of a court pleading)
    F02434-E0001-00002672 (a copy of a letter to Total)
    F02434-E0001-00002673 (a copy of a letter from Total)
    F02434-E0001-00002698 (an assignment)
    F02434-E0001-00002699 (an assignment)
    F02434-E0001-00002700 (an assignment)

    F02434-E0001-00004700 ( a copy of a division order)
    F02434-E0001-00005604 (an assignment)
    F02434-E0001-00005611 ( a copy of a division order)

Becauser this Court has now expended enough of its resources on this privilege log, the following unprotected documents are listed by the first number in the privilege log: 597, 598, 600-602, 604-607, 609, 611, 613, 615-617, 620-621, 623-625, 627-631, 633-636, 638-639, and 643. The Court simply wishes to state for the record that it queries how one could assert a privilege with regard to documents sent to opposing counsel (not drafts), public pleadings filed in this Court, recorded documents with the Minerals Management Service ("MMS"), and correspondence on which the MMS was a participant.

With regard to the allegedly deficient responses to specific requests for production ("RFP"), the Court resolves the dispute as follows:

    RFP No. 11:    The Court finds this RFP to be extremely overbroad and not reasonably calculated to lead to the discovery of admissible evidence. This Order reserves the right to defendants to narrow and to re-word the RFP and re-propound it.

    RFP Nos. 12-13 and 24:

        The Court finds these RFPs to be reasonably calculated to lead to the discovery of admissible evidence. However, finding these RFPs to be overbroad, the Court temporally limits these RFPs to 10 years from the enactment of the RRA.

    RFP Nos. 14-15:

        The Court finds that these RFPs are extremely overbroad, a bit vague (at least

with regard to RFP No. 14) and not reasonably calculated to lead to the discovery of admissible evidence.

RFP Nos. 18-19:

The Court can not fathom how these RFPS will lead to the discovery of admissible evidence. The Court finds that why Chevron entered the lawsuit via affidavit has no bearing on the interpretation of the overriding royalty interest.

RFP No. 20: Chevron shall respond to this RFP as it is reasonably calculated to lead to the discovery of admissible evidence.

## IV. Conclusion

For the foregoing reasons,

**IT IS ORDERED** that Total E&P USA, Inc.'s and Statoil Gulf of Mexico, L.L.C.'s Motion to Compel the Production of Documents from Chevron U.S.A., Inc. in Response to Subpoena [Doc. #255] is GRANTED IN PART as outlined above. Chevron shall comply with this Order **no later than ten (10) days from the below date**. Should Chevron believe that any of the documents that this Courts orders produced are confidential and proprietary, it shall adopt the protective order in place in this lawsuit or it shall meet and confer **no later than five (5) days from the below date** with opposing counsel to confect an agreed-upon protective order.

New Orleans, Louisiana, this 19th day of August, 2014.

*[signature]*

**DANIEL E. KNOWLES, III**
**UNITED STATES MAGISTRATE JUDGE**