UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TOTAL E&P USA, INC. and<br>   STATOIL GULF OF MEXICO, LLC | CIVIL ACTION |
| | NO. 09-6644 |
| VERSUS | C/W 10-0160 |
| KERR-McGEE OIL & GAS CORPORATION, ET AL | SECTION "N" (3) |

**ORDER AND REASONS**

Presently before the Court is a motion for summary judgment filed by Defendant Total E&P USA, Inc. ("Total").[1] Having carefully considered the parties' submissions and applicable law, **IT IS ORDERED** that Defendant's motion (Rec. Doc. 308) is **GRANTED IN PART** and **DENIED IN PART** to the extent stated herein.

**Analysis**

The primary focus of Defendant's motion is Plaintiffs' claim for statutory penalties for Defendant's non-payment of overriding royalties during the production period that the federal government's landowner royalty was suspended pursuant to the Outer Continental Shelf Deep Water

---

[1] Although listed first in the caption of this document, Total and Statoil Gulf of Mexico, LLC ("Statoil") have been re-designated as Defendants at the request of the parties. Kerr-McGee Oil and Gas Corporation (n/k/a Anadarko US Offshore Corporation)(hereinafter "Kerr-McGee") and the individual claimants, Lynn S. Belcher, C. Dan Bump, Cathy Zeornes Guy, Gary A. Hummel, Allan D. Keel, Kevin A. Small, and Wayne G. Zeornes have been designated as Plaintiffs. See Rec. Docs. 248, 252, and 258. Although the instant motion was originally filed by Total and Statoil, the Court since has been advised that the claims against Statoil either have been settled, or are close to being settled. Accordingly, the Court rules on the pending motion only as it pertains to Total, who is referred to herein as Defendant. Kerr-McGee and the individual claimants are referred to herein as Plaintiffs.

1

Royalty Relief Act ("DWRRA").[2] The Court finds Defendant to have timely stated reasonable cause for non-payment of the overriding royalties such that the penalties (double damages and attorney's fees) authorized section 212.23 of the Louisiana Mineral Code are not available to Plaintiffs.[3]

As reflected in the parties' submissions, District Court Judge A. J. McNamara previously granted summary judgment in Defendant's favor, finding that Plaintiffs were not entitled to payment of overriding royalties during the time that the federal government's landowner royalty

---

[2] See Pub.L. No. 104–58 (1995) (codified at 43 U.S.C. § 1337(a), and with further uncodified sections present in notes to 43 U.S.C. § 1337).

[3] The applicable provisions of the Louisiana Mineral Code provide, in pertinent part:

**La. R.S. 31:212.22. Required response of obligor to notice.**

The obligor shall have thirty days after receipt of the required notice within which to pay the royalties or production payments due or to respond by stating in writing a reasonable cause for nonpayment. The payment or nonpayment of the sums due or stating or failing to state a reasonable cause for nonpayment within this period has the following effect.

**La. R.S. 13:212.23. Effects of payment or nonpayment with or without stating reasonable cause therefor; division order**

A. If the obligor pays the royalties or production payments due plus the legal interest applicable from the date payment was due, the owner shall have no further claim with respect to those payments.

B. If the obligor fails to pay within the thirty days from notice but states a reasonable cause for nonpayment, then damages shall be limited to legal interest on the amounts due from the date due.

C. If the obligor fails to pay and fails to state a reasonable cause for failure to pay in response to the notice, the court may award as damages double the amount due, legal interest on that sum from the date due, and a reasonable attorney's fee regardless of the cause for the original failure to pay.

2

was suspended.[4]  In so ruling, Judge McNamara found the "calculate and pay" clauses in the applicable assignment contracts to be unambiguous "because they clearly provide that the overriding royalties 'shall be calculated and paid in the manner and subject to the same terms and conditions as the landowner's [federal government's] royalty under the Lease.'"[5]  On appeal, the Fifth Circuit reversed and remanded the matter for further proceedings consistent with the majority's opinion.[6]  Specifically, the Fifth Circuit majority concluded that the "'calculate and pay' clauses . . . do not clearly and explicitly express the intent that overriding royalty payments shall be suspended whenever the U.S. landowner royalties are suspended under the DWRRA; and [instead] must be interpreted further in search of the common intent of the parties to the assignment contracts."[7]  The panel further reasoned:

> Assuming without deciding that the "calculate and pay" clauses may reasonably be interpreted as Total and Statoil contend, the clauses are at least ambiguous because a reasonable inference also may be drawn that the "calculate and pay" clauses merely refer to the lease terms and conditions for the method of calculating overriding royalties and that they do not intend for the lessees' obligation to pay overriding royalties out of production to be suspended altogether under any circumstances.[8]

Now, on remand, the instant motion asks the Court to address the availability of statutory penalties authorized by the Louisiana Mineral Code, assuming that Plaintiffs prevail at trial

---

[4]   See December 14, 2010 Order and Reasons (Rec. Doc. 179), 2010 WL 5207591 (E.D. La.).  The matter was re-allocated to the undersigned on July 1, 2013.  See Rec. Doc. 202.

[5]   See Rec. Doc. 179, p.11;  2010 WL 5207591 at * 4.

[6]   See June 20, 2013 Opinion (Rec. Doc. 204), 719 F.3d 424 (5th Cir.).

[7]   *Id.* at 429.

[8]   *Id.*

3

on their breach of contract claims. On this issue, notwithstanding the Fifth Circuit's conclusion relative to Plaintiffs' arguable entitlement to payment of additional overriding royalties, the Court finds the substance of the assignment contracts' "calculate and pay" clauses[9] to be determinative of Plaintiffs' penalty claims. That is, the Court finds no triable question to exist relative to the reasonableness of Defendant's stated cause for non-payment[10] and, moreover, finds Defendant to be entitled to judgment as a matter of law on the issue. In other words, even if Defendant's proffered interpretation of these provisions is ultimately determined to be erroneous – given the parol evidence to be introduced by the parties at trial – Defendant's interpretation cannot, on the showing made, be found legally unreasonable such that statutory penalties are warranted.

In reaching this conclusion, the Court first emphasizes that, although it would not have been difficult to modify the assignment contracts' language to clarify and confirm the parties' intent regarding any suspension of the overriding royalty, no such language was included.[11] This

---

[9] See 1999 Assignment of Overriding Royalty Interest and 2001 Assignment of Overriding Royalty Interest, Rec. Doc. 308-4, pp. 15 and 20 of 120.

[10] Defendant's responses to Plaintiffs' demands for payment in the fall of 2009, as well as the declaratory judgment action commenced by Total in October 2009, refer to the language of the lease and the provision in the assignment contracts stating that overriding royalty interest "shall be calculated and paid in the same manner and subject to the same terms and conditions as the landowner's royalty under the Lease under the Outer Continental Shelf Deep Water Royalty Relief Act [and] no royalties are owed to the landowner under the Lease before production exceeds at least 87.5 million barrels of oil equivalent." Defendant's responses to Plaintiffs' demands also reference its declaratory judgment action and its deposit into the Court's registry of the production proceeds that otherwise would be owed to the overriding royalty owners. See Defendants' Statement of Undisputed Material Facts (Rec. Doc. 308-3), ¶¶ 20-27 and 31; October 2, 2009 Complaint (Rec. Doc. 1), ¶¶ 26-29.

[11] According to Plaintiff's expert, Robert W. Robison, Jr., some parties to documentary instruments creating overriding royalty interests on leases subject to the DWRRA have included language specifically addressing the effect of royalty suspensions on the overriding royalty interests. Although some of these instruments postdate Defendant's filing its declaratory judgment action, others precede it. See August 6, 2014 Robison Deposition Transcript, Rec. Doc. 322-2, pp. 13-15

is true notwithstanding the change to the standard form lease necessitated by the passage of the DWRRA in 1995.[12] To the contrary, as emphasized by Judge McNamara and dissenting Circuit Judge Emilio Garza, the 1999 and 2001 assignment contracts – both executed by sophisticated, commercial entities – expressly and undisputedly simply state: "The overriding royalty interest assigned herein shall be calculated and paid in the same manner and subject to the same terms and conditions as the landowner's royalty under the Lease."[13] Footnote 1 of the Lease expressly states that the Lease may be eligible for "royalty suspension" and, if eligible, sections 5 and 6, which address payment of royalties, are superceded.[14]

Furthermore, at the time in question, as referenced in Defendant Statoil's stated reasons for nonpayment, there was no existing case law addressing whether overriding royalties were either generally suspended during royalty relief periods or suspended based on the specific language of the assignment contracts at issue here. Additionally, according to Plaintiffs' proposed expert, Robert W. Robison, Jr., the question of the impact on an overriding royalty interest, if any, of a suspension of the landowner's royalty interest, was not, at that time, a "hot topic of discussion"

---

and 19-20 of 289; October 2010 Robison Affidavit, Rec. Doc. 322-2, pp. 73-74 of 289; June 30, 2014 Robinson Expert Report and Exhibit A, Rec. Doc. 322-2, pp. 31, 38, and 42-53 of 289.

[12] See Footnote 1 to the June 1, 1998 United States Department of the Interior Minerals Management Service Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act (form MMS-2005)(March 1986), Rec. Doc. 308-4, p. 7 of 120; see also October 2010 Robison Affidavit, Rec. Doc. 322-2, pp. 67-69.

[13] See Rec. Doc. 308-4, pp. 15 and 20 of 120. The 2001 assignment contract language differs slightly, but not materially. It provides: "The overriding royalties described herein shall be calculated and paid in the same manner and subject to the same terms and conditions as the landowner's royalty under the Lease." See Rec. Doc. 308-4, p. 20 of 120.

[14] See Footnote 1 to the June 1, 1998 United States Department of the Interior Minerals Management Service Oil and Gas Lease of Submerged Lands Under the Outer Continental Shelf Lands Act (form MMS-2005)(March 1986), Rec. Doc. 308-4, p. 7 of 120.

within the industry.[15] Thus, although perhaps maverick, the Court cannot say the query raised by Defendant was legally unreasonable.

Significantly, moreover, having questioned its obligation to pay overriding royalties during the DWRRA suspension period, Defendant did not rest on its laurels or wait for the royalty owners to take action. Rather, Defendant filed its declaratory judgment action in early October 2009, seeking judicial determination of the extent of the overriding royalty payment obligations. At that time, Defendant also acted to safeguard the funds sought by Plaintiffs by depositing them (as they accrued throughout 2010) into the registry of the Court.

Despite ruling in Defendant's favor relative to Plaintiffs' penalties request, the Court recognizes that certain facts arguably weigh against Defendant. For instance, Chevron U.S.A., Inc., a party to the 2001 assignment contract, upon query from Defendant Total, in March 2009, and Statoil, in the fall of 2009, advised that it disagreed with their position relative to any suspension of the overriding royalty obligation. Additionally, Chevron paid those royalties from the beginning of production. That being said, statutory penalties may be imposed, pursuant to §212.23 of the Louisiana Mineral Code, only if the cause for nonpayment of royalties is unreasonable; mere error does not suffice.

Plaintiffs also point to economic analyses apparently utilized by Defendant in connection with its acquisition of its interest in the lease, and thereafter, suggesting no expectation

---

[15] See Robison Deposition Transcript, Rec. Doc. 333-4, pp. 57-60.

of a suspension relative to the overriding royalties,[16] as well as Defendant's (allegedly inadvertent)[17] payment of production royalties to the individual claimants in July and August 2009.[18] Civil penalties are not to be imposed, however, except for clearly egregious conduct. See, e.g., *Columbine II Ltd. P'ship v. Energen Resources Corp.*, 129 Fed. Appx. 119, 123, 2004 WL 977627, *4 (5th Cir. 2004)(citing *Crowe v. Equitable Life Assur. Soc.*, 179 La. 444, 452-53, 154 So. 52 (La. 1934)). Moreover, a penalty award pursuant to §212.23 is not automatic; rather, it is a matter of the Court's discretion. See La. R.S. 31:212.23(C)("the court *may* award")(emphasis added); see also *Columbine II Ltd. P'ship*, 129 Fed. Appx. at 123-24, 2004 WL 977627, *3-4 (district court abused its discretion in doubling damages). Thus, even if Plaintiffs are correct that Defendant changed its opinion regarding the point in time at which overriding royalties were due only after lease production drew near, and a close examination of the contractual provisions and resulting financial implications were undertaken, the Court nevertheless does not find a third party's decision to seek judicial determination of its obligations, owed as the result of not one, but two, commercial contracts bearing the language at issue here, prior to paying millions of dollars in royalties that at least arguably were not owed, to be sufficiently egregious to warrant the imposition of substantial monetary penalties. Accordingly, the Court finds Defendant's summary judgment motion meritorious relative to Plaintiffs' request for an award of double damages and attorney's fees pursuant to §212.23 of the Louisiana Mineral Code.

---

[16] See Comex Dossier, Rec. Doc. 148-2, p. 20 (KMSJE 14, Sealed). The Court also refers to the documents cited in footnotes 38 and 39 of Kerr-McGee's opposition memorandum (Rec. Doc. 322, p. 10).

[17] See Complaint, Rec. Doc. 1, ¶22.

[18] Lease production commenced in May 2009.

Defendant's summary judgment motion also seeks dismissal of the Plaintiffs' unjust enrichment claims, reformation claims, and requests for declaratory judgment. Plaintiffs do not oppose Defendant's request relative to their unjust enrichment claim. Accordingly, that aspect of Defendant's motion also is granted.

Regarding Plaintiffs' claim for reformation and request for declaratory judgment, it is unclear to the Court that maintenance of these claims remains necessary given the Fifth Circuit's ruling relative to Plaintiffs' breach of contract claim. Nevertheless, in an abundance of caution, the Court will not grant Defendant's motion relative to those aspects of Plaintiffs' claims at the present time. This ruling is without prejudice, however, to Defendant's right to re-urge its request prior to the case being submitted to the jury. The parties are further instructed to promptly confer in an effort to reach stipulations regarding these aspects of Plaintiffs' claims that will streamline the matters to be presented to the jury.

## **Conclusion**

For the reasons stated herein, Defendant's motion is granted relative to Plaintiffs' penalties claims and claims for unjust enrichment. Defendant's motion is denied, at this juncture, relative to Plaintiffs' claims seeking reformation and declaratory judgment.

New Orleans, Louisiana, this 30th day of October 2014.

**KURT D. ENGELHARDT**
**United States District Judge**